1,WILLIAMS, Judge.
Donna Hill, the mother of W.T. and L.T., appeals a judgment of disposition placing the children in the custody of their father, Ronnie Trotti, “with the support and help of the paternal grandparents” and subject to visitation by the mother. Finding that the children were in need of care, the trial court ordered that the placement was subject to continued monitoring by the Office of Community Services. For the following reasons, we amend, affirm as amended and remand.
FACTS
In October 1994, during the divorce proceeding between Donna and Ronnie Trotti, a consent judgment awarded the parents joint custody of the minor children, W.T. and L.T., and designated Donna Trotti (now Hill) as the domiciliary parent. The father was granted visitation every other weekend. Subsequently, the parties were divorced.
In February 1999, Donna Hill filed a petition to .modify custody and to restrict the father’s visitation. Hill also filed a petition seeking domestic abuse protection alleging that Ronnie Trotti had held a gun to her head, left the older child in a truck sitting on railroad tracks while a train approached, hit the children with his hands and belt, locked the children in a dark room for extended periods of time and held their heads under water in the bathtub.
In March 1999, Trotti filed a petition for modification of custody and for psychological evaluations, alleging that Hill had made false allegations and had refused him visitation with the children. The paternal grandparents, Lawrence and Dean Trotti, filed a petition of intervention stating that they had developed a close relationship with the minor children and, if the court restricted or terminated the custodial or visitation rights of either or both | ¿parents, were willing to accept placement of the children in their home.
At a hearing on May 22, 2000, the district court was informed that several days before the trial date, the children had been admitted to a psychiatric hospital with Donna Hill’s consent. Hill testified that the children told her of the father’s acts of physical abuse. She said they were afraid of the dark, would scream during the night and bang their heads against the wall at the prospect of seeing their father. After two days of testimony, the trial court became concerned about Hill’s allegations and her apparent inability to substantiate the claims with corroborating evidence of abuse by the father. The court determined that the children’s placement in a psychiatric facility in Shreveport was unfounded and, on the court’s own motion, ordered that the children be removed from the care of Donna Hill and placed in the custody of the State, pending investigation by the Office of Community Services (“OCS”) in DeSoto Parish.
OCS scheduled psychological evaluations of the children, W.T., L.T., their mother Donna Hill, her current spouse *416 Robert Hill, their father Ronnie Trotti, and his parents, Lawrence and Dean Trot-ti. The evaluations were performed by Dr. John Simoneaux, a psychologist, who opined in his report that Donna Hill’s suspicions of abuse were within the “realm of a delusional disorder.” OCS later determined that Hill had emotionally mistreated the children. Thereafter, the children were adjudicated in need of care. OCS developed a case plan for Hill with a goal of reunification with her children. As part of the plan, Hill began treatment with Dr. Webb Sentell, a clinical psychologist. After evaluating Donna Hill, Dr. Sentell disagreed with Simoneaux’s diagnosis of delusional disorder and described Hill’s condition has “enmeshment,” indicating an unusually close connection with her children. In light of these apparently contradictory diagnoses, the trial court ordered a follow-up evaluation of Hill by Dr. Simoneaux.
At the hearing on March 21, 2001, Kami-sha Atkins, an OCS case manager, testified that OCS recommended the return • of physical custody of W.T. and L.T. to their mother, with OCS providing transitional services for the mother and children, and specific visitation for the grandparents. Atkins stated that Hill had made significant progress toward successfully completing her case plan. Dr. Carol Jannik, the children’s counselor, Dr. Simoneaux and Dr. Sentell testified that they would not disagree with the OCS recommendation to return the children to their mother, if monitoring of the situation continued. Donna Hill testified that she believed her children when the accusations against the father were originally asserted. When asked whether she still believed that the alleged incidents of leaving a child on the railroad tracks, holding the boys’ heads under the water and locking them in dark rooms actually had happened, Hill stated she was still confused since she wasn’t there and did not know what to believe.
In his oral reasons for judgment, the trial judge stated his understanding that in the prior hearing, there was a “stipulation that the children were in need of care and this is the disposition hearing.” The court found that the children remained in need of care. Although the court believed that Donna Hill loved her children, it found that her inability to know what to believe caused her to impose delusional thoughts on the children. The court found that Hill had made progress, but that her problems were long term and not yet resolved.
14The court declined to follow the State’s recommendation and awarded custody of the children to Ronnie Trotti, with the “support and help” of the paternal grandparents, who would care for the children while Trotti was working off-shore with a 14-days on and 14-days off schedule. The court stated that it had “found nothing in Dean and Lawrence Trotti’s situation that would cause this court any concern for their ability to care for the child[ren]. I’m placing the children in the custody of Ronnie Trotti officially, because he is the father. It’s time that he behaved and acted as one.” The custody award was made subject to OCS monitoring, continued counseling of the children with Dr. Jannik, and unsupervised visitation with Donna Hill every other weekend. Hill appeals the judgment.
DISCUSSION
Donna Hill contends the trial court erred in placing the children in the custody of their father. She argues that the court’s disposition was not supported by the evidence and that the children should be returned to her custody.
When a child has been adjudicated in need of care, the child’s health and safety shall be the paramount concern. The court may place the child in the custody of a parent or such other suitable person on such terms and conditions as are *417 deemed in the best interest of the child. LSA-Ch.C. art. 681. The trial court’s determination concerning the placement of a child in need of care is entitled to great weight and will not be reversed on appeal absent an abuse of discretion. State in the Interest of T.H., 561 So.2d 904 (La.App. 2d Cir.1990).
In the present case, the trial court’s finding that W.T. and L.T. were in | sneed of care has not been appealed. At the disposition hearing, the children’s therapist, Dr. Carol Jannik, testified that she had seen each child for more than twenty weekly counseling sessions and opined that them overall well-being had improved during that time. Jannik stated that when the sessions started, W.T. appeared more manipulative than the average child, but that his behavior had improved because of firm limits established in the counseling sessions. Jannik opined that L.T. was very energetic, but was not a hyperactive child and that his attention span was good. Jannik testified that she would not object to returning the children to the mother’s care because safeguards such as counseling would be in place to identify any regression in their behavior. However, Jan-nik stated she would have preferred a longer period of time before returning the children to the mother so that she could continue her progress in therapy.
Dr. Simoneaux testified that his first evaluation of Hill indicated that she was exaggerating her complaints of abuse by the children’s father and that these ideas had become “delusional” because she continued to believe the events had occurred despite a lack of evidence. Simoneaux stated that he saw improvement in Hill’s condition during the second evaluation, in which the mother admitted she did not have proof that the father had abused the children as alleged and she accepted the possibility that the events may not have happened.
Simoneaux testified that this was a positive development and that he did not totally disagree with the state’s recommended disposition. However, Simoneaux opined that although Hill had made progress in her therapy with Dr. Sentell, vigilance would need to be maintained over her | ^attitudes since she still seemed to believe much of what she had said before.
Regarding the difference in opinion with Sentell concerning Hill’s diagnosis, Simo-neaux testified that after reviewing his notes and the mother’s test results, he continued to believe that the diagnosis of Hill as delusional was valid. Simoneaux explained that he had been able to talk with the children and other family members to obtain critical information which was not available to Sentell. Simoneaux opined that it was more probable than not that a person’s delusional beliefs would recur because the condition waxes and wanes, and that to fully treat an individual’s thought process would take an intense effort in therapy over an extended period of time.
Simoneaux recommended that if the children were returned to the mother, the situation should be monitored by an independent third person, such as the children’s therapist, who would be able to detect if their attitudes toward the paternal side of the family were being affected while in their mother’s care. Simoneaux testified that a healthy relationship with the mother was also important for the children.
Dr. Webb Sentell testified that he began treating Hill in November 2000 with weekly sessions of psychotherapy. Dr. Sentell stated that although he did not agree with Dr. Simoneaux’s diagnosis of Hill as delusional, he agreed that Hill had exhibited symptoms of delusion. Dr. Sentell testified that his treatment was addressing her behavior, which he described as “enmesh- *418 merit,” meaning that Hill has an “unusually close relationship” with her children.
Dr. Sentell explained that to be delusional, one must have a belief [7about something that has no basis in reality. Sentell pointed out that Simoneaux had reported that during an argument, Ronnie Trotti once lifted Hill by the waist so that her head struck the turning blade of a ceiling fan. Sentell opined that Trotti’s behavior of lifting Hill’s head into a ceiling fan was physically abusive and gave Hill a reason to believe that the father possessed the potential to abuse his children. Based on these circumstances, Sentell ruled out a diagnosis of delusional disorder. Sentell acknowledged that although Hill had improved her awareness of the problems caused by her behavior and was genuinely trying to get better, she still needed to do a lot of work in therapy.
Donna Hill testified that she was making progress in therapy and realized the possibility that the alleged acts of abuse of the children by the father may not have happened. However, Hill stated that she was not sure whether the allegations were untrue and that she had acted based on what she had been told by the children. As stated above, when asked whether she still believed that the alleged incidents of the father leaving a child on railroad tracks, holding the boys’ heads under water and locking them in dark rooms actually had happened, Hill stated that she was still confused since she wasn’t there and did not know what to believe.
Although the medical experts did not directly disagree with the state’s recommended disposition in this case, each opined that the mother and children would need additional therapy and that Donna Hill’s interaction with the children would require continuing supervision and close monitoring. The trial court expressed concern that even after several months of therapy, Hill was still unable to say whether she believed the | sprior allegations or to acknowledge that she previously sought to prevent the children from seeing their paternal grandparents and father for scheduled visitation.
Additionally, in her testimony, Hill continued to maintain that she was told by the children about the alleged incidents of abuse by the father. However, Simoneaux reported that in his interviews with the children, they said that their mother told them that the events had happened. Si-moneaux concluded that the children did not have any independent memory of the alleged abuse by their father, but were repeating incidents which their mother told them had occurred.
The trial court heard the contradictory testimony, weighed the credibility of the expert and lay witnesses and considered the medical evidence. Based upon this record, we cannot say the trial court was clearly wrong in finding that the state’s recommended disposition would not serve the best interest of the children at the present time. Consequently, we conclude that the trial court did not abuse its discretion in refusing to return the children to the custody of Donna Hill.
In reaching this conclusion, we note that the trial court tacitly recognized that its award of custody to the father was in effect shared custody with the paternal grandparents due to Trotti’s off-shore work schedule. Thus, we shall amend the judgment of disposition to place the children in the custody of the father and the paternal grandparents. This court’s decision should not be interpreted as a comment on any future award of custody in the pending civil case.
| aCONCLUSION
For the foregoing reasons, the trial court’s judgment of disposition is hereby amended to place W.T. and L.T. in the custody of their father, Ronnie Trotti, and *419 the paternal grandparents, Dean and Lawrence Trotti. The judgment is otherwise affirmed and the State Department of Social Services is directed to submit a status report to the district court within 60 days of the date this opinion becomes final. In addition, the case review hearing previously scheduled by the trial court shall be reset for a date within 90 days after this court’s opinion becomes final. The case is remanded to the district court for further proceedings consistent with this opinion. Costs of this appeal are assessed to the appellant, Donna Hill.
AMENDED, AFFIRMED AS AMENDED AND REMANDED.