YELVERTON, Judge.
Twin boys, eleven years old, were adjudicated children in need of care in juvenile proceedings. The juvenile judge rendered a judgment of disposition terminating the custody of the State and placing the children in the custody of their father. E.C., the mother of the children, appeals. As her lone assignment of error, she asserts that the State failed to meet its burden of proving that the children were children in need of care under Louisiana law. For the reasons hereafter given, we affirm the decision of the trial court.
*578 These are special needs children. They both have attention deficit hyperactivity disorder (ADHD). The mother’s behavior and her ability to deal with the boys has been a subject of contention within the extended family for years. She had domiciliary custody. In about 1997, the mother moved to Arizona, taking the children without telling anyone. Her mother, the children’s grandmother, found out where she was and visited them there several times. The children’s mother tried to prevent the father from having contact with his children during her two-year sojourn in Arizona. On the twins’ return to Louisiana, their proneness to violent outbursts, directed against both adults and other children, led to hospitalizations in a psychiatric treatment center. In the summer of 1999 their violent behavior caused them to be expelled from the summer program at the YMCA. They attended mental health resources and were in special education.
The mother’s personal difficulties in addressing the special psychological needs of the children were compounded by poor relations with her new husband. The record evidences fights in the presence of the children, police interventions, and |?criminal charges. In February 2000, when the events we are about to describe took place, the mother and her new husband were on the verge of divorce.
The critical events precipitating this juvenile proceeding happened on Saturday, February 12, 2000. The facts as found by the trial judge were that the children’s maternal grandmother was scheduled to pick up the twins from their mother’s house for rehearsal for a church event. The children were to stay the night with the grandmother, then return to their mother’s home the next day. The mother called the grandmother prior to the prearranged pick-up time and told her to come get the children right away. When the grandmother arrived, the mother was very distraught. In front of the children, she told the grandmother that she “couldn’t handle these f — king kids” and that the grandmother was to take them. The grandmother left with the children, stopping briefly on the way. When they arrived back at the grandparents’ house, they found four trashbags containing the children’s clothes and belongings the mother had delivered and placed on the porch.
On Monday, February 14, the grandmother contacted the father and requested that he take the children temporarily, as the grandparents were scheduled to travel out of the country. The father picked the children up, and they spent the night with him. On Tuesday morning, the mother went to the grandmother’s home and demanded her children. WTien she was told the children had spent the night with their father, she was “livid” and “in a very explosive attitude.”
The grandmother, concerned about the welfare of the children and her daughter’s prior threats to take the children off again, contacted the juvenile court judge for Rap-ides Parish and told the judge about her daughter’s most recent actions. This happened on Tuesday, February 15, 2000. On that date Judge Swent, designated |3by the rules of the Ninth Judicial District Court as the juvenile court judge, issued an oral instanter order, placing the children in the legal custody of the State of Louisiana. This was followed the next day by a formal order based on the sworn affidavit of the State agency. The juvenile court ordered physical custody to remain with the father. A continued custody hearing was scheduled, but the hearing was rendered unnecessary when the mother stipulated that the children were in need of care.
The State’s investigation was followed by a petition to adjudicate the children in *579 need of care and protection. The mother moved to recuse Judge Swent, who then recused herself. The ease was assigned to Judge Ryland. In due course, Judge Ry-land conducted an adjudication, hearing numerous witnesses over a period of two days. Finding that the children were in need of care, the juvenile court made a disposition ruling that it was in the children’s best interests to terminate the custody of the State and place them in the custody of the father. The judgment provided visitation for the mother.
It is this judgment that is on appeal.
APPELLANT’S ASSIGNMENT OF ERROR
The mother’s sole assignment of error reads as follows: “The State did not meet its burden of proof in that it did not prove any abuse or neglect as defined by the Louisiana Children’s Code or their allegations in the petition for adjudication.” The assignment directly addresses whether the State met its burden of proof as to the merits of the adjudication. However, very little of the appellant’s brief addresses the issue of whether the State alleged abuse or neglect and met its burden of proof. Appellant’s brief is concerned almost entirely with the argument that the juvenile ^proceedings were so riddled with procedural defects that we should for those reasons reverse the disposition and return custody to the mother. We are going to address these latter arguments even though they have not been made assignments of error. We do so in the interest of justice under the broad authority we are given by Louisiana Code of Civil Procedure Article 2164. However, we will first address the specifically assigned error, because it goes to the merits of the case. An understanding of the pleadings and evidence will furnish the reader with a better understanding of the adjudication, as well as our conclusion that the trial judge correctly found the State proved by a preponderance of the evidence that the children were in need of care. We begin our analysis by addressing the pleadings.
Article 2 of the State’s petition seeking an adjudication that the children were in need of care reads:
Your petitioner alleges that the above named minors are in need of care based on the following facts and circumstances:
A. [The mother] abandoned her children to her maternal grandparents, stating “come get these (expletives deleted) kids,” and placed their personal belongings on the porch of the maternal grandparents.
B. The mother is unable to attend to the special psychological needs of the children and is unable to provide a stable home for them.
When Janice Upton, of the Rapides Child Protection Agency, received the report on February 15, 2000, Judge Swent had already placed the children in State custody. The children were brought to Ms. Upton’s office late that day by their father. On February 17, at the continued custody hearing, the mother decided to schedule a psychological examination hearing. At the request of the department, | KJudge Swent on that date ordered that both boys, and both sets of parents, have psychological evaluations with Dr. John Si-moneaux. She also ordered that the children be maintained in the State’s legal custody, but she ordered that physical custody be placed with the father. She ordered that the maternal grandparents have visitation and that the mother could have visitation with the boys at the grandparents’ house.
Three months later in May, after she received the reports of his evaluations from Dr. Simoneaux, Ms. Upton validated *580 dependency. Explaining, Ms. Upton testified at the trial that the mother’s
emotional problems, her marital problems, her unstable lifestyle — there had been several incidents where the police had been called because of fighting between her and [her husband]. That all of that led to her inability to provide the best care for these children. These are children who have special needs. They need a very structured, nurturing environment.
Utilizing the Office of Community Services (OCS) Program Policy Manual, Chapter 4, Child Protection Investigation, on the subject of Neglect, she defined “dependency” as
Being without reasonable or necessary food, clothing, shelter, medical care, supervision or other care, or without parental care or guardianship, as a result of the severe mental illness, chronic physical illness or physical disability, mental retardation, death, incarceration, chemical abuse, or other condition related to the parent’s ability to care for the child.
It is permissible to review decisions of social workers in the light of the OCS Program Policy Manual. Todd v. State Through Social Services, 96-3090 (La.9/9/97); 699 So.2d 35. Ms. Upton testified that it was the agency’s conclusion that the mother’s problems prevented her from providing the children the care that they needed. She testified that the children were in need of care.
| fiThe trial court heard additional evidence from several sources that support its ruling in this case. First, the court heard the testimony of Dr. John Simoneaux, the psychologist assigned to this matter. The psychologist examined the father and his spouse, the mother and her spouse, and the children. From his examination of the mother, he determined that she was not able to provide a stable environment for the children to grow up in, noting problems with her new husband and the mother’s own psychological shortcomings. He noted that her test results indicated a low tolerance for frustration, poor judgment, and a difficult time seeing how her actions affected others. He also noted that telling the grandmother she “couldn’t handle these f-king kids” in front of the children bordered on emotional abuse.
The trial court heard from the grandmother, who told the court that she hated to say it in front of her daughter, but she did not think her.daughter could handle the children. The court also heard from several state agencies, including the Rap-ides Parish Child Protection Agency and the Rapides OCS. The CASA representative appointed by the court testified. The recommendations were uniform that there should be termination of State custody and placement of the children with the father.
The purpose of Title VI of the Children’s Code as stated in Article 601 is to protect children whose physical or mental health and welfare is substantially at risk of harm by physical abuse, neglect, or exploitation and who may be further threatened by the conduct of others, by providing for the reporting of suspected cases of abuse, exploitation, or neglect of children; by providing for the investigation of such complaints; and by providing, if necessary, for the resolution of child in need of care proceedings in the court.... This Title is intended to provide the greatest possible protection as promptly as possible for such children. The health, safety, and best interest of the child shall be the paramount concern in all proceedings under this Title.
See also State in the Interest of L.C.B., 01-CJ-2441 (La.1/15/02); 805 So.2d 159. “[T]he courts of this State have consistently found the interest of the child to be *581 paramount over that of the parent.” State ex rel. G.J.L., 00-3278, p. 6 (La.6/29/01); 791 So.2d 80, 85.
It is well-settled that an appellate court cannot set aside a juvenile court’s findings of fact in the absence of manifest error or unless those findings are clearly wrong. State in Interest of D.T. v. K.T., 29,796 (La.App. 2 Cir. 6/18/97); 697 So.2d 665. In manifest error review, it is important that the appellate court not substitute its opinion when it is the juvenile court that is in the unique position to see and hear the witnesses as they testify. “[T]he trier of fact ... is not disadvantaged by the review of a cold record and ... is in a superior position to observe the nuances of demeanor evidence not revealed in a record.” Adkins v. Huckabay, 99-3605, p. 15 (La.2/25/00); 755 So.2d 206, 215. We find no manifest error in the trial court’s finding of fact that these children were in need of care.
PROCEDURAL DEFECTS
We will now address the mother’s arguments regarding the procedural defects in this juvenile case. Although these contentions were not assigned as errors, her brief concentrates on these contentions and we will address them.
First, she contends that Judge Swent did not have the authority to unilaterally issue an instanter order based on an ex parte conversation with the grandmother. She argues that this was a usurpation of the authority of the appropriate state agency and that it branded all subsequent proceedings with nullity.
We agree that the children in need of care proceedings here were initiated in a manner not exactly in accord with Children’s Code Articles 619 and 620. There was no prior investigation by any State agency before the oral order was issued. |sHowever, we need not take a position, one way or the other, as to whether a juvenile judge has or lacks the authority, unilaterally, without the local child protection unit participation, to issue an oral instanter order placing custody in the State upon the receipt of a report from any reliable source that a child is in need of care. We need not rule on that question because in this case there is another procedural fact that eliminates the need for examining the validity of the oral instanter order. That fact is a stipulation. At the continued custody hearing held under Children’s Code Article 624 on February 17, 2000, the State did not have to prove a ground for continued custody because the mother, who was present in court with her attorney, stipulated to the children being children in need of care. There was thus no hearing. It is well-established that stipulations of fact have the effect of law between the parties. Picard v. Vermilion Parish School Board, 00-1222 (La.App. 3 Cir. 4/4/01); 783 So.2d 590, unit denied, 01-1346 (La.6/22/01); 794 So.2d 794. As a result of this stipulation, there were reasonable grounds to believe that the children were in need of care and that continued custody was necessary for their safety and protection. By stipulating to continued custody in the State, the mother waived her right to complain that the instanter custody order was without effect.
The mother’s next procedural argument, as best we can make out, is that this case should never have been decided as a juvenile matter; rather, it should have been conducted as a civil change of custody matter. The mother seems to be arguing, inconsistently, that the trial judge actually treated it as a civil custody matter, but used the burden of proof standard found in the Children’s Code for adjudication of a child in need of care. To respond to these confusing and somewhat inconsistent *582 |flcontentions, it is necessary that we go back now and revisit other events in the background of this litigation.
In February 2000, after the mother turned the children over to their grandmother, and after the grandmother turned them over to their father, the father sued seeking a modification of custody in the ongoing civil litigation pending before Judge Ryland. The next day, Juvenile Judge Swent took jurisdiction, as explained above. On June 29 of that year, the mother filed a motion to recuse Judge Swent, on the ground that the judge would be a witness in the cause, citing Louisiana Code of Civil Procedure Article 151(A). Judge Swent voluntarily signed an order recusing herself and transferred the matter to Division E of the Ninth Judicial District Court. Judge Swent recused herself for the written reasons that she had been “provided with a copy of the Application for Supervisory Writ in Civil Suit Number 168,883, a matter allotted to Division E and that a civil custody matter is pending.... ” The recusal was made in consideration of judicial economy. The Division E judge was Judge Ryland.
The application for supervisory writs to which Judge Swent referred in her written recusal order was filed in our court on May 31, 2000. Writs were sought from a ruling of Judge Ryland in the civil custody matter. After the father moved to modify custody in the civil matter, the mother filed an exception on the ground that the civil court lacked subject matter jurisdiction. Her contention, based on the argument that the juvenile court had exclusive jurisdiction, was that the matter was then in juvenile court and should stay there. The trial court denied the exception. This was the ruling that the mother filed her writ application to overturn. Although Imwe denied the writ, thus giving the civil court the green light for proceeding in the civil matter, only the case in juvenile court went forward.
We make the above explanations for the purpose of showing that the mother never made any objection to the juvenile proceeding until after the adjudication and disposition. Although she moved for the recusal of Judge Swent, she never objected to the case going forward as a juvenile proceeding. To the contrary, she encouraged it, first by stipulating that the children were children in need of care for purposes of the continued custody hearing, and later, as we have just pointed out, by contesting the jurisdiction of the court in the civil matter brought by the father for change of custody. Only now, after judgment was rendered against her in the juvenile proceeding, does the mother seek to go back and find fault with the juvenile proceedings from their inception.
After having stipulated that the children were in need of care for purposes of continued custody, and after having sought writs from us to protect the juvenile court’s jurisdiction in the case, the mother’s next move at the district court level was to attempt to recuse Judge Ryland. In August, she moved for his recusal on the ground of Article 151(A), alleging that he would be a witness in the cause. She alleged that Judge Ryland had had contacts with the maternal grandfather and also with Judge Swent about the case. She further alleged that these contacts created prejudice in his mind, causing there to be a further ground for recusal under Article 151(B)(5). Another judge was appointed to hear this motion to re-cuse Judge Ryland, and the motion was denied.
Our careful study of this record convinces us that there is no foundation for the mother’s complaints that this case was not tried under the proper substantive and | nprocedural rules. The adjudication was *583 conducted strictly under the auspices of the Children’s Code. It was not conducted, as the mother would have us believe, as a hybrid juvenile and civil proceeding. The nature of the proceeding was clear from the beginning. To illustrate, when the adjudication proceeding began before Judge Ryland, the mother’s counsel moved for sequestration of the witnesses. She sought to have the father sequestered, pointing out that he was unrepresented, that he was not a party to the adjudication, and that he “is the plaintiff in the companion case which is to be heard subsequent to this one.” We assume that the “companion case” to which she referred was the civil custody case pending before Judge Ryland. The mother and her counsel were clearly aware that the case on trial was a juvenile matter being heard by Judge Ry-land in his capacity as a juvenile judge.
To further illustrate, numerous times throughout the adjudication hearing there were colloquies between court and counsel indicating that all were aware that this was a juvenile matter and that the rules and burden of proof under the Children’s Code were applicable. We reject the argument that somehow this proceeding was converted by the trial judge into a civil proceeding, and that the only relationship it had with the Children’s Code was the utilization of the “best interest” burden of proof. The record reveals that this was a juvenile case from the beginning to the end and that everyone so understood.
Finally, in the short conclusion part of the mother’s brief, she submits merely that the decision of the trial court finding that the best interests of the children required their placement in the custody of their father was error. She asks that that decision be reversed and that the children be returned to her custody. We regard this |i?as an attack on the disposition ruling, which was neither assigned as error nor otherwise mentioned in the body of her brief. We will discuss it nonetheless.
In listing the dispositional alternatives of the court, Louisiana Children’s Code Article 681 begins as follows:
A. In a case in which a child has been adjudicated to be in need of care, the child’s health and safety shall be the paramount concern, and the court may:
(1) Place the child in the custody of a parent or such other suitable person on such terms and conditions as deemed in the best interest of the child including but not limited to the issuance of a protective order pursuant to Article 618.
By placing the children in the custody of the father, the court was utilizing the first dispositional alternative listed in Article 681. The trial court found that this placement was in the best interest of the children. In doing so, there is no question that the trial court used the proper standard for this disposition, as is evident in its written reasons for judgment.
CONCLUSION
The court heard an abundance of testimony concerning the mother’s ability to provide the care these children need. Based on the evidence before it and its own credibility determinations, the trial court found that the children were in need of care, as the mother could not adequately provide for the special psychological needs of the children. This finding of fact is supported by the record and is not manifestly erroneous. Therefore, it will not be disturbed. Additionally, the court found that their best interests required that the father have custody of the children. Nothing in the 11 ¡¡record indicates that this disposition as to custody was an abuse of the court’s great discretion in that realm. This ruling will also remain undisturbed.
*584 For the reasons assigned, the judgment of the trial court is affirmed. Costs of this appeal are assessed to the Appellant.
AFFIRMED.
DOUCET, J., concurs and assigns written reasons.
PETERS, J., dissents, and assigns written reasons.