70 So.3d 960 (2011)
STATE of Louisiana in the Interest of D.A.
No. 10-CA-1040.
Court of Appeal of Louisiana, Fifth Circuit.
June 14, 2011.
Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Assistant District Attorney, Gretna, LA, Joseph R. McMahon, Jr., Elizabeth B. Curren, Assistant District Attorneys, Harvey, LA, Sherry Watters, Tilden H. Greenbaum, III, Attorneys at Law, Department of Children and Family Services, Harahan, LA, for Plaintiff/Appellee.
Timon V. Webre, Attorney at Law, Indigent Defender Board Harvey, LA, for Parents/Appellants.
Jennifer Leigh Guillot Womble, Attorney at Law, Metairie, LA, for Minor Child/Appellee.
Panel composed of Judges MARION F. EDWARDS, FREDERICKA HOMBERG WICKER, and HILLARY J. CRAIN, Pro Tempore.
MARION F. EDWARDS, Chief Judge.
D.A., the son of A.A. and A.J., an unmarried couple, was adjudicated to be a Child in Need of Care. His father, A.J., appeals the adjudication.
Born in 2005, D.A. resided with his mother until shortly after Hurricane Katrina. D.A. then lived with his father for two months, but was returned to A.A., his mother, after two months. A.J. was arrested *961 in May of 2006 and is presently serving a twelve-year sentence in prison with a release date of May 2, 2018.
The case first came to the attention of the State of Louisiana, Department of Children and Family Services ("DCFS") in 2007. A.A., who suffers from mental problems, agreed to a safety plan by which R.J., the paternal grandmother, would assist with child care. In August of 2009, A.A. completed an affidavit making R.J. a caretaker of D.A., who then began residing with his grandmother. After only two weeks, R.J. was obliged to return the child to his mother due to her own poor health. D.A. remained with his mother until April 2010, when child protection again became involved. A.A. contacted DCFS, stating that she had been diagnosed with bipolar disorder and depression, that she no longer wanted to care for the child, and that she could not provide a safe environment for him.
In April of 2010, pursuant to an affidavit filed by the State of Louisiana, DCFS, an instanter order was issued granting temporary custody of the minor child, D.A., to DCFS. In the supporting affidavit, A.A. stated that she did have relatives willing to help her. However, A.A. refused agency services. D.A. was placed into foster care in the home of his maternal aunt, where he remained at the time of the hearing.
In May 2010, DCFS filed a Petition for Child in Need of Care on behalf of D.A., alleging neglect by the parents. The parents denied the allegations of the petition. In June 2010, A.A. stipulated that D.A. was in need of care under La. Ch.C. art. 647. Adjudication as to A.J. was continued until July, at which time the court found D.A. in need of care as to his father. At that time, it was determined that continued removal from the parents was necessary, although reunification with the mother was the least restrictive appropriate disposition. A.A. continued to refuse services. The court informed the parents that termination of parental rights may be filed upon failure to comply with the case plan and to make significant progress toward achieving the outlined goals. Judicial disposition as to A.J. was continued pending a psychological evaluation. The case plan included assessments of substance abuse and domestic violence problems for both parents.
In July 2010, the adjudication hearing regarding A.J. was held. At the close of the hearing, the court adjudicated D.A. to be a child in need of care as to A.J. based on neglect during the time period in question. After waiving time delays, the court proceeded to disposition, approving a plan of eventual reunification with the mother. The disposition hearing as to A.J. was recessed for a determination of whether services could be provided for him in prison. On August 31, 2010, the court was informed that such services could not be provided. DCFS further announced it would pursue termination of parental rights as to A.J., which plan the court approved. The court continued D.A. in the custody of his present caretaker pending termination proceedings. A.J. appeals the disposition.
At the July hearing, Ms. Kay Evans of DCFS testified that D.A.'s parents had never married. A.A. had an older son who lived with relatives in Texas. A.A. and D.A. also lived in Texas for a while following Hurricane Katrina, then D.A. lived with his father for a couple of months. A.J. was arrested in 2006 and had been incarcerated since then, on a twelve-year prison sentence. He knew of A.A.'s mental problems and the challenges she has had raising her older son. He had not personally made care plans for D.A. after his incarceration, but indicated that A.A. had arranged for his mother, R.J., to take *962 care of the child. R.J. had several health issues relating to being on dialysis several times a week and could no longer care for her grandson. She is also legally blind. R.J. returned the child to A.A., revoking the provisional custody previously granted. It was stipulated that A.J. submitted a care plan which called for R.J. to be the child's caretaker, but that DCFS had just become aware of this plan. Ms. Evans stated that R.J. was willing to take care of D.A., but DCFS had already placed him in a suitable situation, and the father's plan was not appropriate or safe for the child.
A.A. testified that A.J. called D.A. whenever D.A. was visiting R.J. but has never provided financial support. R.J.'s testimony was taken by telephone, at which time she stated she was 62 years old, was willing to care for D.A., and was in a position to do so. She then testified that she is on dialysis three days a week, has high blood pressure and diabetes, and has "bleeding behind her eyes" but is not blind. After her treatments, she does not feel ill but comes home and cooks. There are five people presently living in her home, some of whom are small children, but D.A. would have his own room, and R.J. felt that she could "chase after" him. The mother of the other children in her home also lives with her. R.J. thought she was healthy enough to take care of D.A. When she returned D.A. to his mother, she had taken some cold medicine that had made her sick, and she wanted his mother to take the child back and forth to school until she felt better. She did not intend to return him permanently, but she had been hospitalized. However, she did not attempt to have D.A. returned although she felt he was not safe with his mother. The court found R.J. was not able to provide the necessary care and treatment, and D.A. was at substantial risk of harm due to the continuing absence of his father.
After adjudication, DCFS presented its plan for both A.A. and A.J. With regard to A.J., the department determined, among other things, that he had to contribute payments of $25 per month toward the cost of child care, to demonstrate an ability to maintain a safe and clean environment, and to attend a psychological evaluation that includes an assessment of his substance abuse problems. He was to actively participate in a domestic violence program and complete a safety plan in this regard. The court continued the disposition as to A.J. in order to determine what services were available at prison to enable him to comply with the State's plan.
At the next hearing in August, DCFS informed the court that, because R.J. was not an appropriate alternative to foster care and because A.J. had eight years remaining on his sentence, it would pursue termination of parental rights as to him. The court approved the plan based on the length of A.J.'s incarceration, finding that imprisonment would affect reunification.
On appeal, A.J. urges that the trial court erred in finding he neglected D.A. He alleges that his absence in and of itself is not neglect and that his plan was reasonable and prevented the child from being at risk.
At the adjudication hearing, the State bears the burden of proving by a preponderance of the evidence that the child is a child in need of care. La. Ch.C. art. 665. It is well-settled that an appellate court cannot set aside a juvenile court's findings of fact in the absence of manifest error or unless those findings are clearly wrong.[1] Where there is conflicting *963 testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even when the appellate court may feel that its own evaluations and inferences are as reasonable as those of the juvenile court. If the juvenile court's findings are reasonable in light of the record reviewed in its entirety, the appellate court may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.[2]
The purpose of Title 6, Child in Need of Care, of the Louisiana Children's Code is to protect children whose physical or mental health and welfare is substantially at risk of harm by abuse, neglect, or exploitation. La. Ch.C. art. 601. The health, safety, and best interest of the child are the paramount concern. Id.
La. Ch.C. art. 606, in relevant part, states:
A. Allegations that a child is in need of care must assert one or more of the following grounds:
...
(2) The child is a victim of neglect.
(3) The child is without necessary food, clothing, shelter, medical care, or supervision because of the disappearance or prolonged absence of his parent or when, for any other reason, the child is placed at substantial risk of imminent harm because of the continuing absence of the parent.
"Neglect" means the refusal or unreasonable failure of a parent or caretaker to supply the child with necessary food, clothing, shelter, care, treatment, or counseling for any injury, illness, or condition of the child, as a result of which the child's physical, mental, or emotional health and safety is substantially threatened or impaired. La. Ch.C. art. 603(16).
There was testimony at the hearing that, although A.J. was aware of A.A.'s mental illnesses and inability to properly care for a child, he returned D.A. to her at some point following Hurricane Katrina. He did not make the arrangements for R.J. to see to or take custody of the child at that time but left all such decisions to A.A. In addition, incarceration arising from a parent's voluntary criminal act may not alone serve as an excuse to escape the consequences of a failure to support one's child, if the incarceration is shown to be a result of the parent's actions.[3]
In H.A.N., we stated that "There is no set rule resolving the question of whether incarceration is justification for nonsupport. Facts and circumstances vary. Each case is decided upon its particular merits." ... While the courts must recognize that "the potential loss to the parent is grievous, perhaps more so than the loss of personal freedom caused by incarceration," the child's interest is paramount over that of the parent in balancing the sometimes competing interests between the rights of the parent and a child's best interest in a termination of parental rights case....[4]
*964 Although the cited cases involve termination of parental rights, the same reasoning must also apply in an adjudication of a child in need of care. The record before us clearly supports a finding that A.J. failed to support D.A. and, under the facts herein, his incarceration was not an excuse for the ongoing failure to support. There was sufficient evidence for the court to find that A.J.'s failure to attempt to make safe plans for D.A., as well as his lifelong failure to provide financial support for the child, was neglect.
In addition, under the particular facts of this case, the court could have reasonably found that A.J.'s incarceration constituted a prolonged and continuing absence which placed D.A. at substantial risk of harm because of a lack of necessary supervision. Although after the petition was filed, A.J. eventually proposed his mother as caretaker, her physical condition appears to be such that she has difficulty providing the necessary care and supervision for such a young child. Although her stated willingness to attempt to care for her grandson is commendable, after R.J. was obliged to return D.A. due a temporary medical setback, she took no action in his regard even though she felt he was still in danger with his mother. There is support for a determination that R.J. was not able to supply the necessary care and support for the child.
The State proved by a preponderance of evidence that D.A. was a Child in Need of Care, and the trial court did not err in so finding. For the foregoing reasons, the judgment is affirmed.
AFFIRMED
NOTES
[1] State in the Interest of S.M.W., 00-3277 (La.2/21/2001), 781 So.2d 1223; Interest of C.C. v. E.C.C, 01-1364 (La.App. 3 Cir. 3/20/02), 813 So.2d 576 (citing State in Interest of D.T. v. K.T., 29,796 (La.App. 2 Cir. 6/18/97), 697 So.2d 665).
[2] In re A.J.F., 00-0948 (La.6/30/00), 764 So.2d 47.
[3] In re Fleming, 01-1405, p. 7 (La.App. 5 Cir.4/30/02), 817 So.2d 371, 376; In the Interest of H.A.N., 528 So.2d 1079, 1080 (La.App. 5 Cir.1988).
[4] State ex rel. J.T.C. and J.A.C., 04-1096 (La. App. 5 Cir. 2/15/05), 895 So.2d 607, 616 (on rehearing), writ denied, 05-0466 (La.4/8/05), 899 So.2d 11, cert. denied, 546 U.S. 890, 126 S.Ct. 187, 163 L.Ed.2d 201 (2005) (citations omitted).