DREW, J.
| Nile minor children, H.M. and Q.M., were adjudicated as children in need of care following the brutal death of their three-year-old sister, R.M., at the hand of their designated caretaker, T.W. The mother, D.M, has appealed from the juvenile court’s judgment granting custody of H.M. and Q.M. to their father, J.G., and supervised visitation to D.M. with the children as agreed upon by the parties. The State of Louisiana filed a brief urging this court to uphold the juvenile court’s ruling; the attorney for J.G. and counsel for the children join the state in asking that the trial court’s judgment be affirmed. For the reasons set forth below, we affirm.
FACTS AND PROCEDURAL HISTORY
D.M. is the mother of eight children: S.M., K.M., B.M., Y.M., R.M., H.M., Q.M., and L.M. D.M. has a criminal history in Virginia and Louisiana. According to D.M., she was convicted of fraud and embezzlement in Virginia, she served five years and was ordered to make restitution in that case.
At some point, after being “on the run” with her children for years, moving from state to state, D.M. relocated to Louisiana. Apparently she was charged with felony theft in this state in 2009, for which she was initially given a suspended sentence. Thereafter, in 2011 her probation was revoked, and D.M. was required to serve her sentence. D.M. began doing her prison time in Louisiana in January 2012 at Cad-do Correctional Center before being transferred to Louisiana Transitional Center for Women in Tallulah. Eventually, D.M. was sent to Virginia to serve the remainder of her sentence in that state.
|2After D.M.’s arrest, her infant daughter, L.M., lived a brief period of time with her older sister, S.M. L.M. then lived with *680 her father, F.M.[1] D.M. gave her then 18-year-old daughter, S.M., a power of attorney and provisional custody of five-year-old H.M., three-year-old Q.M., and two-year-old R.M., with instructions to take care of her younger sisters and remain in contact with D.M.[2]
While incarcerated, D.M. became friends with T.W., an inmate from Shreveport. The two had allegedly met, some four months before D.M. went to jail, through her youngest daughter’s father, F.M. According to D.M., she and T.W. became sisters in Christ during their joint incarceration. In March 2012, F.M. came to see her and told her that he had taken their six-month-old daughter, L.M., from S.M., and that S.M. needed help with the other three girls. She did not hear from S.M. for several months, and she was mad that money was not being deposited to her prison account. D.M. gave T.W., who was released from prison in October 2012, provisional guardianship of H.M., Q.M., and R.M.
T.W. took the three girls while they were at their babysitter’s house, then thwarted all efforts of S.M. and other family members to have them returned to her or other relatives.
On June 17, 2013, three-year-old R.M. was taken to the Louisiana State University Health Sciences Center in Shreveport with serious injuries |sfrom which she died. The fatal injuries were caused by T.W., who had beaten R.M. severely with a thick extension cord. The State of Louisiana, Department of Children and Family Services (“DCFS”), took H.M. and Q.M. into temporary state custody, and T.W. was arrested for the second degree murder of R.M. Forensic interviews with H.M. and Q.M. revealed that they were also subjected to extreme physical abuse and neglect at the hands of T.W.
When the children were taken into state custody, their mother, D.M., was still incarcerated, and DCFS case workers did not know the identity of their father.[3]
J.G., the father of H.M., Q.M., and R.M., lived in the New Orleans area. He made contact with DCFS and related that he had been looking for his daughters for a while. According to J.G., he and his sister, who lived in Shreveport, had lost contact with the children because the girls were moved around a lot and their mother was in and out of jail. A petition seeking to have H.M. and Q.M. adjudicated as children in need of care was filed based upon their mother’s negligent entrustment of them to T.W. Temporary custody of the girls was awarded to their father, J.G., during the pendency of the proceedings.
Following a disposition hearing held on September 26, 2013, the juvenile court judge found that permanency had been achieved and ordered that the children be maintained in the custody of their father, J.G. The mother, D.M., was to be awarded supervised visitation pursuant to a |4mutually acceptable schedule subject to court approval, and child support was to be set by the court at a later date. In his oral reasons for judgment, the juvenile judge observed:
*681 I have refreshed my recollection, as if I could ever get the images out of my mind of the pictures of [RM, the sister of HM and QM]. I have made a finding, essential to an in need of care determination, that the mother was responsible for those injuries due to the negligent entrustment of her children to a virtual stranger in prison, having no knowledge whatsoever of her temperament in the ■free world, her parenting ability.... I reject again, here at disposition, the mother’s implicit argument that she’s not responsible for what happened to that little girl.
D.M. has appealed from the juvenile court’s judgment, asserting that the court erred in adjudicating H.M. and Q.M. to be children in need of care based upon the finding that D.M. was guilty of neglect due to inadequate supervision for negligently entrusting the children to a “stranger.”
DISCUSSION
The purpose of Title VI of the Children’s Code, which authorizes and governs “Child in Need of Care” proceedings, is to protect children whose physical or mental health and welfare is substantially at risk of harm by abuse, neglect, or exploitation. La. Ch. C. art. 601. Under this Title, as is the case throughout the Children’s Code, the health, safety, and best interest of the children are the paramount concern. Id.; State ex rel L.B., 08-1539 (La.7/17/08), 986 So.2d 62; State ex rel A.U.M., 46,082 (La.App.2d Cir.2/16/11), 62 So.3d 185.
At the adjudication hearing, the state bears the burden of proving by a preponderance of the evidence that the children are in need of care. La. Ch. C. art. 665; State ex rel L.B., supra; State ex rel L.M., 46,078 (La.App.2d Cir.1/26/11), 57 So.2d 518. An appellate court cannot set aside a juvenile court’s findings of fact in the absence of manifest error or unless those findings are clearly wrong. State ex reí S.M.W., 00-3277 (La.2/21/01), 781 So.2d 1223. As noted by the Louisiana Supreme Court in State ex rel. L.B., supra, great deference is owed to the juvenile court’s findings in child protection proceedings.
The state alleged that the children were in need of care due to D.M.’s negligent entrustment of them to a stranger, which also was a lack of supervision on D.M.’s part, especially as she had several family members who had expressed their willingness to care for the children during the mother’s incarceration. The trial court observed the following at the adjudication hearing:
[Negligent entrustment is not a term used in the Children’s Code.... [T]he state alleges neglect due to a lack of adequate supervision ... negligent en-trustment of the children by the mother to a stranger in prison with a criminal record which resulted in the death by physical abuse of one of the children. That’s the allegation.
Neglect is the unreasonable failure of a parent to supply a child, for purposes of this case, with necessary care as a result of .which the child’s physical health and safety is substantially threatened.
Just because children are even killed by a third party doesn’t mean a parent is or is not responsible. Rather, it depends upon whether the delegation of care, that definition in neglect, the delegation of care and control, the entrustment is reasonable or not, it’s negligent or not. That’s how we get negligent entrustment as grounds [to support a child in need of care adjudication] in my view....
Necessity is not a defense in this case. There was an alternative to placing them with [T.W.]. They’ve been detailed. [The testimony is] abundant. Various *682 relatives, leaving them with the daughter, contacting the father....
It was not a reasonable thing to do under these circumstances to turn the children over to a fellow inmate.... It was not necessary to turn |fithem over to this fellow inmate.... I find the children that survived that experience [of watching their caretaker beat their younger sister to death and also enduring physical abuse themselves] are children in need of care and adjudicate them as such.
Children who are the victim of neglect are in need of care. La. Ch. C. art. 606(A)(2). Children who are without necessary food, clothing, shelter, medical care, or supervision because of the disappearance or prolonged absence of their parents, or when, for any other reason, the child is placed at substantial risk of imminent harm because of the continuing absence of the parent, are likewise considered to be in need of care. La. Ch. C. art. 606(A)(3). “Neglect” is defined as the refusal or unreasonable failure of a parent or caretaker to supply the children with necessary food, clothing, shelter, care, treatment, or counseling for any injury, illness, or condition of the children, as a result of which the children’s physical, mental, or emotional health and safety is substantially threatened or impaired. La. Ch. C. art. 603(18). As observed by the supreme court in State ex rel. J.A., 99-2905 (La.1/12/00), 752 So.2d 806, 813, the Legislature has defined a “neglected” child in very broad terms precisely because foreseeing all of the possible factual situations that may arise is impossible. Furthermore, the broad definition enables experienced juvenile courts to apply their training and experience to the unique facts and circumstances of each case. Id.; See also, State ex reí. L.M., supra.
The instant case is analogous to an older case from the Fourth Circuit. In State in the Interest of Black, 310 So.2d 174 (La.App. 4th Cir.1975), writ denied, 313 So.2d 829 (La.1975), a young child was found to be neglected and was removed from the custody of her mother as a result of her 17mother’s entrustment of the child to a casual acquaintance who administered severe physical beatings to the child. The court noted that while in fairness, at the time the mother sent the infant to live with her friend, she could not have reasonably anticipated the abuse the child would continue, nonetheless the mother’s decision was classified as one made with “total disregard and wanton neglect of the well being of her child.” 310 So.2d at 177. “Parenthetically, we are obliged to observe that neglect is often the handmaiden of abuse in cases such as this. Had there been something less than complete neglect of [the child] by her natural mother ... there would have been far less likelihood of abuse at the hands of [the appointed caretaker].” Id. at 178.
The Fourth Circuit further wrote, Id. at 178-9:
[The mother’s] reasoning [that the episode that precipitated the juvenile proceeding was an isolated one, that the evidence does not show that the abuse of the child was a usual thing, and that she had no previous knowledge that the child was or might have been abused and only learned after the fact of the abuse] is specious. A one time, very minor traffic violation calls the authority’s attention to the driver of an offending vehicle. He is obviously driving while intoxicated. Must the court restrict its inquiry to the minor traffic violation?
Very often the single instance of abuse or neglect that catches the official eye and offends the official conscience is *683 only the tip of the iceberg. Fortunately for little girls like [this child], the legislature of this State has enacted legislation which empowers the Juvenile Court to institute protective action. The fact that this one instance of abuse (assuming that it was the only one) puts the various applicable statutes into operation in [the child’s] behalf is a tribute to the simple majesty of the law. The inexorable response of the law to [this child’s] plight is not based upon the number of times that she has been abused, but upon the fact that she has been abused at all. The fact of that incident has provoked an inquiry which has resulted in the finding that she was not only abused but is neglected and requires protection not only from the abuse of [her caretaker] but from the neglect of [her mother].
[ sUnder the legislature’s very broad definition and based upon our review of the evidence in this case, we find that D.M.’s actions clearly constituted neglect. She knowingly and unreasonably entrusted her children to T.W., a complete stranger to them and someone she met and formed a casual friendship with while incarcerated, rather than leaving them with their older sister or accepting the assistance offered by other family members. By doing so, D.M. failed to provide her young children with the necessary care and supervision to which they are entitled, thus placing them at a substantial risk of physical harm and abuse at the hands of T.W. While we are not without empathy for D.M., whose absence was the result of her imprisonment and was not necessarily a deliberate and wilful abandonment of her children, we are struck by the fact, as was the trial judge, that she had several family members, including the father of the children, who could have provided the necessary care and supervision required by these precious children. There is testimony that the children are thriving with their father, who lives in the New Orleans area, and that he is willing to facilitate visitation between the girls and their mother. There is no manifest error in the juvenile court’s factual determinations and adjudication in this case.
CONCLUSION
For the reasons set forth above, the judgment of the juvenile court is AFFIRMED.

.The instant case is a companion to State in the Interest of L.M., 49,098 (La.App.2d Cir.3/26/14), - So.3d -. Both involve children removed from the care and custody of D.M., but are based on slightly different facts and circumstances, hence the reason for their separate treatment and disposition.

. According to D.M., 16-year-old K.M., 14-year-old B.M., and nine-year-old Y.M. are with D.M.’s sister in Virginia.

. T.W. gave investigators the wrong man’s name, and the children’s birth certificates did not list a father.